# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>United States vs. Pedro Tavarez</u> 11-CR-610

Dear Judge Garaufis:

This letter is submitted on behalf of Pedro Tavares in anticipation of his sentencing hearing, which is scheduled for [*sentencing date?*]. On January 31, 2012, Mr. Tavares pled guilty to one count of use of a passport secured by false statements in violation of 18 U.S.C. § 1542 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. We have reviewed the pre-sentence report with Mr. Tavares and have no objection to the factual assertions therein. We concede that the probation department has correctly calculated the guidelines range at one to seven months, predicated on an offense level of six and a criminal history category of II. 18 U.S.C. § 1028A mandates a two-year sentence to run consecutively to the guidelines sentence for count one. Because the actual circumstances of Mr. Tavares's crime and background are more than sufficiently addressed by the mandatory statutory sentence he is facing, we ask that this Court to consider a very modest departure from the guidelines and sentence Mr. Tavares to a term of incarceration of no more than 24 months and one day. Here, a sentence of two years and one day, to be followed by Mr. Tavares's deportation, would be sufficient but not greater than necessary to "reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense."

## MR. TAVARES'S OFFENSE

The conduct for which Mr. Tavares was charged and has entered a guilty plea involved using another individual's identity to obtain a passport. Mr. Tavares purchased papers containing the identifying information of an individual, Jose Antonio Velasquez, who died on August 10, 1988. PSR ¶ 4. Mr. Tavares subsequently applied for a passport with the deceased individual's information.

The sentence this Court imposes must not be greater than necessary to comply with the purposes set forth in the sentencing statute. 18 U.S.C. § 3553(a). Among other purposes, the sentence must "reflect the seriousness of the offense, promote respect for the law, and ... provide just punishment for the offense." 18 U.S.C. § 3553(a)(2). Congress mandated a minimum of two

years' imprisonment for the crime of aggravated identity theft presumably because it determined that the mandatory sentence justly reflected the seriousness of the crime.

However, Congress's determination that there was a need for a federal aggravated identity theft statute was justified partially because "[t]he insider threat from identity theft and identity fraud is a threat to personal security as well as national security." H.R. Rep. No. 108-258, at 5 (2004). While Mr. Tavares acknowledges the seriousness of his offense, his conduct was not, in this case, a "threat to personal security," as the identity he purchased was one was sold to him by Mr. Velasquez himself. We do not dispute that Mr. Tavares's conduct defrauded the United States and impeded its ability to police its own borders. However, we ask the Court to consider that the actual Mr. Velasquez sold his identity to Mr. Tavarez as mitigating individual factor in this case. Here, Mr. Tavarez's conduct did not constitute "theft," at least in a common law understanding of the offense. Accordingly, a sentence of two years and one day would be sufficient to "reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense."

## MR. TAVARES'S BACKGROUND

Mr. Tavares has faced difficult circumstances throughout his life. He grew up one of seven children in a lower-income household in the Dominican Republic. PSR ¶¶ 40, 41. Poverty was a significant factor in Mr. Tavares's early life; his family qualified for public housing, and occasionally, they went without sufficient food or clothing. PSR ¶ 41.

Mr. Tavares's parents separated when he was around eight years old because of disagreements regarding their living situation. PSR ¶ 40. His mother retained custody of him and his siblings. PSR ¶ 41. She subsequently began a relationship with a man who became Mr. Tavares's *de facto* stepfather. PSR ¶ 41. However, this man was a serious alcoholic who drank to such excess that he often passed out in the street. PSR ¶ 41. He physically abused Mr. Tavares's mother, to the point that her own children had to defend her from his attacks. PSR ¶ 41.

Mr. Tavares suffers from significant physical and mental health issues. During his many years as a livery cab driver, Mr. Tavares was involved in three severe car accidents, leaving him with pain and herniations in his back. PSR ¶ 50. His injuries required surgery. PSR ¶ 50. Additionally, Mr. Tavares suffers from depression, including feelings of worthlessness, for which he was prescribed daily medication. PSR ¶ 49.

Despite all these difficulties, Mr. Tavares has worked steadily since his youth. Indeed, Mr. Tavares was forced to leave school after eighth grade in order to work. PSR ¶ 52. While still a teenager, he assisted his stepfather, a welder, for several years. PSR ¶ 57. He then became a tailor, working in Santo Domingo and then in clothing stores throughout Manhattan. PSR ¶ 57. He began working full time as a livery cab driver in 1994, first for Super Class Car Service, and then for Excellent Car Service when the owner of Super Class relocated the business. PSR ¶¶ 55, 56.

Mr. Tavares financially supported his mother until her death from a heart attack in 1995. PSR ¶ 40. He maintains a good relationship with his grown children who live in Santo Domingo.

PSR ¶ 42. He maintains contact with, and, prior to his arrest, provided partial financial support to, his children with his wife Carmen Mejia. PSR ¶ 45. Though they are no longer together, Mr. Tavares maintains regular contact with Ms. Mejia. PSR ¶ 45. One of Mr. Tavares's sons died of complications from AIDS at the age of 25. PSR ¶ 42.

## MR. TAVARES'S PROPOSED SENTENCE

Although Mr. Tavares has had encounters with the criminal justice system before, none of his convictions were for violent offenses. The most serious of the offenses was nearly twenty years ago. Mr. Tavares was convicted for being an accomplice to a co-defendant's purchase from one Secret Service agent and sale to another of engraving plates used in counterfeiting money, for which he received an eighteen month prison term. PSR ¶ 30. His other convictions are a twenty-two year old conviction for criminal sale of a controlled substance resulting in time served, a sixteen year old conviction for aggravated unlicensed operation of a motor vehicle resulting in seven days' imprisonment, and a seven-year-old conviction for disorderly conduct resulting in a conditional discharge. PSR ¶¶ 28, 32, 34. Again, none of these convictions were for violent crimes. Were it not for the disorderly conduct conviction, an extremely minor charge, Mr. Tavares's last conviction would have been for conduct that occurred in 1995. As far as criminal records go, this set of old, unrelated, and minor convictions is adequately addressed by the two-year statutory minimum which Mr. Tavares is facing.

## CONCLUSION

Given the difficult circumstances of Mr. Tavares's early life, his physical and mental health problems, and his minor criminal record, a very slight downward departure from the guidelines is appropriate in order for the sentence to reflect "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In consideration of the circumstances of Mr. Tavares's offense and personal history, we respectfully request this Court impose on Mr. Tavares a sentence of 24 months and one day.

Sincerely,

Len Hong Kamdang
Counsel to Pedro Tavares
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718)7-407-7415

Robert Langdon
Law Student Intern
New York University Law School

Copies to:

James Foster, United States Probation Department (via hand delivery)

Nadia Shihata, United States Attorney's Office (via first class mail)